IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERGIO ALVAREZ,

Plaintiff,

vs.

MATTHEW CATE, et al.,

Defendants.

No. C 11-2034 JSW (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM; STAYING CASE**

(Docket No. 52)

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed civil rights action pursuant to 42 U.S.C. § 1983 about the conditions at Pelican Bay State Prison ("PBSP"). He timely amended his complaint, and Defendants filed a motion for summary judgment. Plaintiff filed an opposition, and Defendants filed a reply brief. Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. The case is referred to the court's Pro Se Prisoner Mediation Program for mediation proceedings and stayed for all other purposes until the conclusion of those proceedings.

## BACKGROUND

Plaintiff is a Mexican national and a descendant of the "Uto-Aztecan" native people of Mexico. He alleges that prison officials prohibit his creation of drawings and murals depicting native Mexican and other pre-Columbian religious and cultural symbols,

including the Aztec "stepped fret" or duality symbol, the "Huelga eagle," the symbol for the thirteen-day cycle of the Tonalpohualli calendar that is used to determine the timing of religious ceremonies, and the Nahuatl language, which is believed to have been created by the Uto-Aztecan gods and is used to write the gods' names. (Amend. Compl. Exhs. 1, 2A-2E; Pl. Decl.[1] ¶¶ 19-20, Exs. I-K.) Creating such drawings in collaboration with other followers of the religion, worshiping and appreciating the drawings, and sharing them with family members and friends are all practices of his Uto-Aztecan religion.[2] (*Id.*) Defendants confiscated a number of these drawings when Plaintiff and other prisoners with whom he collaborated attempted to mail them to family members because they were believed to promote the activities of prison gangs.

Prison officials have validated Plaintiff as a "high ranking" member of the "Nuestra Familia" prison gang and its affiliated gang called the "Northern Structure." (Frisk Decl. ¶ 12, Exh. A.)[3] Prison regulations define a prison gang as "any gang which originated and has its roots within the [California prisons] or any other prison system." 15 Cal. Code Regs. § 3000. Prison gangs' influence extends "beyond the prison walls" and threatens the security of California prisons because gangs engage in violence, drug trafficking, extortion and other illegal activities. (*Id.* ¶ 4.) As a result, prison rules forbid inmates from "knowingly promoting, furthering, or assisting" a prison gang. 15 Cal. Code Regs. § 3023(a).

Since 2006, prison officials have placed inmates determined to be gang leaders, including Plaintiff, in a specific wing of the SHU called the "short corridor" in order to isolate them from other inmates who are gang members. (Frisk Decl. ¶¶ 7, 12.) As a

---

[1]This is the declaration plaintiff filed in support of his opposition to Defendants' summary judgment motion (docket 71).

[2]The religion believes that the souls of the collaborators become part of the artwork.

[3]Plaintiff denies being a member of any prison gang.

result, gang members have been found to send coded and hidden messages by mail to intermediaries outside the prison, including family members, who then transmit them to gang associates on the street or back to other inmates in the prisons. (*Id.* ¶¶ 7, 8.) Officials confiscate mail containing "gang symbols, codes, or anything that appears to involve gang activity." (*Id.* ¶ 9; *see* 15 Cal. Code § 3006, 3136(a).) Officials find that confiscating such mail is "critical" to the management of gangs because it thwarts communication among gang members and their intermediaries and allows prison officials to gather intelligence on gang members and activities. (*Id.* ¶¶ 10-11.)

Officials in the prison's "Office of Correctional Safety" identify the various gangs' symbols, mottos, creeds or monikers after reviewing evidence including statements from former gang members. (*Id.* ¶ 14.) Officials may not identify gang symbols on an ad hoc basis. (*Id.*) Prison rules prohibit tattoos or personal property depicting such symbols or other gang identifiers in order to prevent overt displays of gang affiliation, which can foster or promote gang activity; any property depicting such materials is confiscated and can be used as evidence to validate the inmate as a gang member or affiliate. (*Id.* ¶ 15.) The OCS has certified, based in part on intelligence received from former gang members, that the "Huelga bird" is a symbol identifying membership in the Nuestra Familia and Northern Structure gangs. (*Id.* ¶ 13.) A validated prison-gang member may not possess or mail property depicting the Huelga bird because it is deemed to be gang-related. (*Id.* ¶ 19.) The same is not true of the Christian cross, Jewish Star, Muslim crescent, the "yin and yang" symbol, or the Native American dream catcher. (*Id.* ¶ 20.)

Prison officials confiscated approximately that Plaintiff attempted to mail to his wife and mother on September 24 and 25, 2009, because they included depictions of the Huelga bird.[4] (*Id.* ¶ 18, Ex. B; Barnts Decl. Ex. A.) Pursuant to prison procedures, Defendants Silveira, Brandon and Rosenberg, who are prison gang investigators, issued

[4]There were six drawings and a photograph with drawings on it.

Plaintiff forms notifying him of the confiscated items and placed "chronos" on CDC Form 128-B into Alvarez's file as evidence of his continued gang activity. (*Id.*) Defendants Wise, McGuyer, Bradbury, Barneberg, Jacquez and Cate denied Plaintiff's administrative appeals challenging the confiscation of his drawings and the general practice and policy of prohibiting what Plaintiff refers to as religious artwork.

Plaintiff has presented evidence that Defendants have also banned and confiscated correspondence containing the Aztec "duality symbol," images from the Tonalpohualli calendar, and the Nahuatl language, on the grounds that these things also promote prison gangs. (Pl. Decl. ¶¶ 6-8, Exs. A, A1; Amend. Compl. Ex. 12.) Plaintiff states that he collaborated with other inmates in making drawings that contained these items, and that Defendants, including Defendants Milligan and Pimentel, confiscated them when the other inmates tried to mail them to people outside the prison. (*Id.* ¶¶ 6-8, 17, Exs. A, H; Compl. Exh. 12.)

Plaintiff claims that Defendants have interfered with practicing his religion by confiscating drawings that he made with other prisoners and that depict Uto-Aztecan religious symbols and the Nahuatl language when he and other inmates attempted to mail the artwork to the family members. He also claims that Defendants are discriminating against him based upon his Mexican nationality and his native Uto-Aztecan race and religion, insofar as members of other races and religions are allowed to depict and mail their religious symbols, including the Christian cross, the Jewish Star of David, and the Muslim crescent moon. These claims have been found cognizable under Section 1983 as asserting the violation of Plaintiff's right to practice his religion under the First Amendment and the Religious Land Use of Institutionalized Persons Act ("RLUIPA"), to send mail under the First Amendment, to the equal protection of the laws, and to due

process protections for possessing personal property and familial relationships.[5]

**ANALYSIS**

**A. <u>Standard of Review</u>**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted). When the moving party bears the burden of proof and persuasion on an issue at trial, it must at summary judgment "show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).

---

[5]Plaintiff's claims related to Defendants' disciplinary actions, including the use of Form 128 chronos, the loss of time credits and denial of parole, and the placement on the "short corridor," were dismissed.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

**B. <u>Legal Claims</u>**

1. <u>RLUIPA</u>

Plaintiff claims that Defendants have violated his rights under RLUIPA by prohibiting him and other inmates from mailing his religious artwork to family members. Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person" in a state prison, "unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Once a plaintiff makes the requisite showing under RLUIPA of a substantial burden on the exercise of his religion, it becomes the defendant's responsibility to establish that the burden furthers "a compelling government interest" and does so by "the least restrictive means." *Greene v. Solano County Jail*, 513 F.3d 982, 986-88 (9th Cir. 2008) (quoting *Cutter v. Wilkinson* 544 U.S. 709, 714 (2005) and 42 U.S.C. §2000cc-5(7)(A)). "Congress has explicitly directed [courts] to resolve any ambiguities in RLUIPA 'in favor of a *broad protection* of religious exercise, to the *maximum extent permitted*.'" *Khatib v. County of Orange*, 639 F.3d 898, 900-01 (9th Cir. 2011) (en banc) (citing and adding emphasis to 42 U.S.C. § 2000cc-3(g)).

Plaintiff has presented sufficient evidence to reasonably show that Defendants substantially burdened his religious practice. A burden is substantial under RLUIPA

when the state "'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. 2008) (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981)). Plaintiff has provided evidence that a significant form of worship and observation of his Uto-Aztecan beliefs is making collaborative artwork containing religious symbols and the Nahuatl language, and then sharing the artwork with family members outside the prison. Defendants denied him the substantial benefit of the mail and communication with his family because of conduct mandated by his religious beliefs, i.e. the creation and dissemination of these drawings to their families.

Defendants argue that they did not substantially burden his religious practice because they only confiscated drawings depicting the Huelga bird, and that Plaintiff is free to create and mail drawings containing other religious symbols. Plaintiff has presented evidence, however, that Defendants also authorized the confiscation of drawings depicting other Uto-Aztecan symbols, including the Aztec duality symbol and the symbols from the Tonalpohualli calendar, and that Defendants have also banned the Nahuatl language. If true, this means that an array of images and the language needed to practice his religion are forbidden and that his religious practice is substantially burdened by the prison rules.

It is not disputed that controlling prison gangs and disrupting their activity serves the compelling and important government interest in keeping prisons, inmates and staff safe. The Court can also defer to the expertise of prison officials that the Northern Structure and other prison gangs have appropriated the Huelga bird, the Aztecan duality symbol, the Tonalpohualli calendar number, and elements from the Nahuatl language have been appropriated as symbols for their gangs. Defendants have not met their burden of showing that confiscating Plaintiff's drawings is the least restrictive means for

disrupting gang activity, however. There is no evidence that the intended recipients of Plaintiff's mail, for example, were affiliated with the Northern Structure or Nuestra Familia, that they had passed coded messages in the past, or that they were in communication with other gang members in the prison. There is no evidence that Plaintiff or the other inmates from whom Plaintiff's artwork was confiscated had in the past sent coded messages inside or outside the prison using these religious symbols or the Nahuatl language. There is also no evidence that the drawings confiscated in this case were in fact coded messages, what those messages were, or that they actually advocated violence or other illicit gang activity. Defendants assert that the drawings "promote" gang activity, but there is no evidence that if they had reached their intended recipients in this case how they would have led to or assisted with any particular illicit gang activity or violence in the prison.

Furthermore, under RLUIPA, prison officials can no longer justify restrictions on religious exercise by simply citing the need to maintain order and security in a prison. *Greene*, 513 F.3d at 989-990. RLUIPA requires more; prison officials must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Id.* (citation omitted); *see, also, Shakur*, 514 F.3d at 891. Defendants present no evidence that they actually considered and rejected the efficacy of a less restrictive alternative to confiscating the drawings being sent to family members.

Defendants have not shown that their confiscation of Plaintiff's drawings are the least restrictive alternative to combating gang activity, which they are required to do because Plaintiff has presented evidence that his religious practices were substantially burdened by Defendants' actions. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's RLUIPA claim.

2. Free Exercise Clause

Plaintiff also claims that the confiscation of the drawings violated his First Amendment rights to freely exercise his religion. In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur*, 514 F.3d at 883-84. A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id.* at 884-85. Rather, the sincerity test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. *Id.*

Plaintiff states that he sincerely holds his religious beliefs in the Uto-Aztecan gods and religion, including the religious significance of the symbols for the Huelga eagle, the Aztecan duality, the thirteen-day cycle of the Tonalpohualli calendar symbol, and the importance of writing his deities names in the Nahuatl language. He also states that he believes in the importance of depicting these materials in drawings and sharing them with family members. While Defendants dispute this and assert that Plaintiff uses these symbols to promote gang activity, a fact-finder could find Plaintiff credible, particularly in light of his native Mexican origins and ancestry. Consequently, the factual dispute as to the sincerity of Plaintiff's beliefs in the symbols for religious purposes is a genuine factual dispute that is material to the question of whether Defendants violated his rights under the Free Exercise Clause.

Resolving this dispute in Plaintiff's favor, as the Court must do for purposes of this motion, the issue becomes whether confiscating the drawings when they were being sent outside the prison to family members was reasonably related to the indisputably legitimate penological goal of preserving prison safety by limiting violent or otherwise illicit gang activity. Four factors are used to determine the reasonableness of a prison

rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

While the interception of gang communication is a certainly rationally related to disrupting gang activity and maintaining the safety of the institution, for the reasons discussed above Defendants' simple assertion that the drawings "promote" the gang does not establish how the confiscated drawings in this case would have led to further gang violence or illicit activity if they had reached their intended recipients. Additionally, for the reasons discussed above, there is evidence that Plaintiff does not have alternative means of exercising the religious practice of collaboratively creating and sharing drawings of his religion's symbols and language with his family members because prison officials ban a number of these symbols and the Nahuatl language as a whole on correspondence. Defendants have produced no evidence that allowing the drawings to be mailed would expend any additional resources. Lastly, for the reasons discussed above, Defendants have produced no evidence that there is no viable but less restrictive alternative to a broad man on mailing to any recipient any depiction of any symbol that has been appropriated by a gang. Therefore, Defendants have not established as a matter of law that impinging on Plaintiff's exercise of his religion by prohibiting him from mailing his drawings to his family members was reasonably related to the legitimate government interest of preserving institutional safety. Consequently, they are not entitled to summary judgment on Plaintiff's claims under the Free Exercise Clause.

3. Equal Protection

Plaintiff claims that Defendants have violated his rights under the Equal Protection Clause because they do not ban other inmates from mailing symbols of their religion, such as the Jewish Star of David, the Christian cross, the Muslim crescent, or the “Yin Yang” symbol. The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). *See Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987). When challenging his treatment with regard to other prisoners, a prisoner must show that his treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993). If the inmate is receiving invidiously different treatment from other inmates, the Court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur*, 514 F.3d at 891.

Defendants argue that Plaintiff is not being treated differently than inmates of different faiths because all inmates are prohibited from depicting or mailing symbols used by gangs. Defendants have shown that investigations by prison officials have determined that prison gangs have appropriated the banned symbols from Plaintiff’s religion. There is no evidence that prison investigators have discovered that prison gangs have appropriated the Christian cross, the Star of David or the other symbols from other faiths cited by Plaintiff. Furthermore, while Plaintiff disputes that he uses the Huelga eagle and other Uto-Aztecan symbols and language to promote gang activity, he has not presented any evidence that calls into question Defendants’ evidence that such

symbols, unlike the symbols from other faiths, have a history of appropriation by prison gangs. He has also not presented any evidence that inmates of other faiths would be allowed to send out mail containing images of the Huelga eagle or the other banned Uto-Aztecan images and language. Lastly, Plaintiff has presented no evidence that if he was treated differently, that such treatment was invidious.

Defendants are entitled to summary judgment on Plaintiff's Equal Protection claim not because they have shown that confiscation of the outgoing artwork was reasonably related to legitimate penological goals, but rather because there is no evidence that he was treated differently from other inmates in the first instance.

4. Outgoing Mail

Plaintiff also claims that banning his outgoing mail violates his First Amendment rights. A limitation on *outgoing* mail is justified only if the limitation in question (1) "furthers an important governmental interest unrelated to the suppression of expression," and (2) is "no greater than necessary or essential" to protect the governmental interest involved. *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008).

Prison officials are not required to show with certainty that any particular correspondence would have adverse consequences because they are given some latitude in anticipating the probable consequences of allowing a certain speech in and out of a prison environment. *Procunier*, 416 U.S. at 414; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (courts owe "substantial deference to the professional judgment of prison administrators."). Confiscation of outgoing mail must further an important or substantial governmental interest unrelated to the suppression of expression. *Procunier*, 416 U.S. at 413 (refusal to send letters concerning escape plans or proposed criminal

activity would be an obvious example of justifiable censorship).[6] The Court has explained above that Defendants have not shown that confiscating the drawings meets the less stringent standard under *Turner* of showing that it was reasonably related to preserving the prison's safety. For the same reasons, Defendants have failed to meet their more difficult burden of showing that confiscating outgoing mail was "no greater than necessary" to preserve prison security and safety. Consequently, Defendants are not entitled to summary judgment on Plaintiff's claim that confiscating his outgoing mail violated his First Amendment rights.

5. Personal Property

Defendants argue that they are entitled to summary judgment on Plaintiff's claim that the confiscation of the drawings violated his due process right to possess personal property because, under *Turner*, the confiscation was rationally related to a legitimate penological interest in prison safety. For the reasons discussed above, Defendants have not met their burden of showing that confiscating the drawings was rationally related to prison security under the *Turner* standard. Accordingly, they are not entitled to summary judgment on Plaintiff's claims.

6. Familial Association

Plaintiff claims that the confiscation of mail to his family members violates his due process right to family relationships. Due process in its substantive sense does protect against a State's interference with family relationships, *see, e.g.*, *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079-80 (9th Cir. 2011), *Lee v. County of Los Angeles*,

---

[6]The Supreme Court listed with approval certain kinds of outgoing mail that reasonably might be disallowed: (1) that which might violate postal regulations, e.g., threats, blackmail, or contraband; (2) that which indicates a plot to escape; (3) that which discusses criminal activities; (4) that which indicates that the inmate is running a business while he is in confinement; or (5) that which contains codes or other obvious attempts to circumvent legitimate prison regulations. 416 U.S. at 414 n.14.

250 F.3d 668, 685-86 (9th Cir. 2001). However, where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of "substantive due process," must be used to analyze such claims. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In other words, substantive due process does not extend to circumstances already addressed by other constitutional provisions. *Id*. Here, Defendants' behavior is limited by the First Amendment and procedural due process protections against taking personal property, as described above. Therefore, substantive due process protections are not extended to Defendants' actions.

7. Defendants' Additional Arguments

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The law governing Plaintiff's claims under RLUIPA, the First Amendment, and personal property was all clearly established in 2009, when Defendants confiscated Plaintiff's outgoing mail. If Plaintiff's evidence version of the disputed facts are believed, as it must be for purposes of summary judgment, a reasonable fact-finder could find that Defendants could not have reasonably believed that confiscating his drawings was lawful. As a result, Defendants are not entitled to summary judgment on the grounds of qualified immunity.

Defendants argue that certain exhibits submitted by Plaintiff cannot be considered because they are not properly authenticated. As Plaintiff is proceeding pro se, the lack of authentication is understandable. Defendants do not point to nor does the Court find in the record any suggestion of their lack of authenticity. As a result, granting summary

judgment on this basis is not appropriate. If, following the mediation proceedings ordered below and any subsequent location of pro bono counsel to represent Plaintiff, Defendants may re-file a summary judgment motion based on Plaintiff's failure to properly authenticate his exhibits.

Defendants Pimentel and Milligan argue that they are entitled to summary judgment on the grounds that there is no allegation or evidence that they were involved in blocking Plaintiff outgoing mail. Plaintiff has submitted evidence that Pimentel and Milligan blocked other inmates from mailing out art that Plaintiff helped create. When liberally construed, the claims in the First Amended Complaint do appear to be based on the confiscation of these drawings in addition to the drawings that Plaintiff himself tried to mail. (Amend. Compl. at 4.) Defendants mistakenly argue that these claims are based on the violation of other inmates' rights. These claims are based on the violation of Plaintiff's rights to the extent that religious artwork that Plaintiff helped create was confiscated. Defendants have nonetheless shown that while Milligan initially blocked the mailing, the correspondence was ultimately allowed to be sent. Thus, the claims against Milligan are not cognizable because of a lack of injury. Defendant Milligan is therefore entitled to summary judgment on this ground, but Pimentel is not.

Defendants are correct that they are entitled to summary judgment on Plaintiff's claims for compensatory damages for mental and emotional suffering, *see* 42 U.S.C. § 1997e(e), and on Plaintiff's claims for damages and retroactive injunctive relief against Defendants sued in their official capacity, *see Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 169-70 (1985) (11th Amendment immunity extends to state officials sued in their official capacity on claims for damages and retroactive injunctive relief). Defendants' argument that money damages are not available under RLUIPA at all, even against Defendants in their individual capacities, is rejected at this time because that issue has not yet been decided by the Ninth Circuit.

**C. Referral to Pro Se Prisoner Mediation Program**

The Court has established a Pro Se Prisoner Mediation Program. Certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner mediation proceedings. The proceedings consist of one or more conferences as determined by the mediator. The conferences are generally conducted at the Plaintiff's institution, with the Defendants or their representatives attending by videoconferencing if they wish. As summary judgment is being denied in part, this case is appropriate for mediation and will be referred to the Pro Se Prisoner Mediation Program.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART, as described above. Plaintiff's request for judicial notice is GRANTED to the extent he simply seeks judicial notice of the contents of court files in other cases. The Court does not find those court documents relevant to this case, however, except to the extent the court opinions may be instructive on legal issues.

This case is REFERRED to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Mediation Program. All further proceedings in this case except those related to the mediation are STAYED until the conclusion of those proceedings. The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Vadas shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

//

//

The clerk shall send a copy of this order to Magistrate Judge Nandor Vadas.

IT IS SO ORDERED.

DATED: March 8, 2013

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

S. ALVAREZ et al,

Plaintiff,

v.

G.D. LEWIS et al,

Defendant.
_______________________________________/

Case Number: CV11-02034 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 8, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sergio Alvarez K42605
Pelican Bay State Prison
D3/215
P.O. Box 7500
Crescent City, CA 95532-7500

Magistrate Judge Nandor Vadas
U. S. District Court
(via email )

Dated: March 8, 2013

Jennifer Ottolini
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk